IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKKO MATERIALS USA, INC. d/b/a GOULD ELECTRONICS, INC., an Arizona Corporation,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>R.E. SERVICE CO., INC., a California corporation,<br><br>　　　　Defendant. | No. C 03-2549 SBA<br><br>**ORDER**<br><br>[Docket Nos. 566, 571] |

This matter came before the Court on the Court's Order to Show Cause [Docket No. 566] and Plaintiff's Motion for Attorney's Fees [Docket No. 571] on April 25, 2006. Having read and considered the papers filed in connection with the hearing, and having considered the testimony and argument set forth on the record at the hearing, and being duly informed, the Court hereby holds Defendant R.E. Service Co., Inc. (also referred to herein as "RES") and Mark Frater in CONTEMPT of the Court's March 16, 2006 Amended Judgment. The Court also GRANTS IN PART Plaintiff's Motion for Attorney's Fees and awards fees to Plaintiff in the amount of $23,899.50, to be paid by R.E. Service Co., Inc. and Mark Frater, jointly and severally.

**BACKGROUND**

On April 11, 2005, at the conclusion of the trial in the above-captioned matter, a unanimous jury found that RES made, used, offered to sell, and sold SC2 and SC3 products that infringed Plaintiff NIKKO's '596 Patent, and that RES' infringement was willful. Following trial, Plaintiff filed, *inter alia*, a Motion for Permanent Injunction.

On January 13, 2006, this Court issued an order granting Plaintiff's Motion for Permanent

Injunction in its entirety.  Pursuant to the January 13, 2006 Order, RES was required to provide an accounting on or before February 17, 2006 of any sales of any infringing products sold between April 12, 2005 and the date of the Court's Order.  RES was also ordered to pay Plaintiff an amount equal to 7.5% of RES' gross revenues for any such post-verdict sales.

On January 17, 2006, the Court entered a final Judgment in favor of Plaintiff and against RES on, *inter alia*, Plaintiff's claim of willful infringement of the '596 Patent.  The final Judgment, however, failed to include the pertinent language regarding the permanent injunction.

On January 25, 2006, Plaintiff filed a Motion to Correct Judgment.  In the Motion to Correct Judgment, Plaintiff requested that the Court amend its Judgment to include the language pertaining to the permanent injunction, so that the wording of the Judgment would be consistent with the Court's intent to impose a permanent injunction.

On March 16, 2006, this Court granted Plaintiff's Motion to Correct Judgment. On the same day, the Court issued an Amended Judgment stating that, no later than March 24, 2006, RES was required to provide to the Court and to Plaintiff an accounting for all of its gross revenues resulting from or in connection with its making, using, offering to sell, selling, or importing laminate products having either one or two sheets of copper foil joined at their borders by a flexible adhesive (including, without limitation, RES' SC2 and SC3 products in which the metal substrate is a steel or carbon steel and the flexible adhesive is applied in strips around the perimeter of the sheets) between April 12, 2005 and the date of the Amended Judgment, inclusive.

RES did not provide the required accounting to the Court or to Plaintiff by March 24, 2006.  On March 31, 2006, Plaintiff filed an Ex Parte Request for a Further Amended Judgment Pursuant to Federal Rule of Civil Procedure 59(e) and for an Order to Show Cause Why Defendant R.E. Service Co. and its President, Mark Frater, Should Not Be Adjudged in Contempt and Sanctioned ("Ex Parte Request"). In the Ex Parte Request, Plaintiff requested that the Court extend the deadline for Plaintiff to further amend the Court's Amended Judgment in light of the fact that the information necessary to amend the Amended Judgment was not provided to Plaintiff by RES within the applicable period.

2

Plaintiff also requested that the Court issue an order to show cause why RES, and its President Mark Frater, should not be adjudged in contempt and sanctioned for willfully failing to submit an accounting by the Court-ordered deadline.

On April 3, 2006, RES' President, Mark Frater, submitted a declaration with the sales figures for the period of March 1, 2005 through March 31, 2006 attached (referred to herein as the "April 3, 2006 Frater Declaration").  The accounting provided by Mr. Frater on April 3, 2006 reflected total sales in the amount of $108,475.70.  The April 3, 2006 Frater Declaration did not otherwise respond to Plaintiff's Ex Parte Request or provide any explanation, whatsoever, as to why the accounting was submitted to the Court after the Court-ordered deadline.

On April 6, 2006, Mr. Frater filed a further declaration (referred to herein as the "April 6, 2006 Frater Declaration").  In the April 6, 2006 Frater Declaration, Mr. Frater stated that the information provided to the Court on April 3, 2006 was erroneous and that, due to a "computer error," sales figures for the period of April 29, 2005 to December 5, 2005 were inadvertently omitted.  The accounting attached to the April 6, 2006 Frater Declaration reflected total sales in the amount of $176,742.00 – a difference of over $65,000.

On April 11, 2006, the Court granted Plaintiff's Ex Parte Request.  The Court further ordered RES and Mr. Frater, individually, to show cause why RES should not be held in contempt and why RES and/or Mr. Frater, individually, should not be sanctioned for willfully failing to comply with the Amended Judgment.  RES and Mr. Frater were instructed to file a Certificate with the Court and to appear before the Court on April 25, 2006.  The Court's April 11, 2006 Order also permitted Plaintiff to file documentation with the Court indicating the amount of fees that Plaintiff had expended due to Plaintiff's delay in providing the accounting to the Court.

On April 25, 2006, the Order to Show Cause hearing was held.  Thereafter, the Court took the matter under submission.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 70, "If a judgment directs a party . . . to perform any

3

. . . specific act and the party fails to comply within the time specified, . . . [t]he court may [] in proper cases adjudge the party in contempt." Fed. R. Civ. P. 70. Additionally, a district court has the inherent power to enforce its orders. This power flows not only from statute, 18 U.S.C.A. § 401, but more broadly from the implied powers "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

Failure to comply with a court order may constitute either civil or criminal contempt. The difference between the two types of contempt lies in the purpose and character of sanction imposed. In the case of criminal contempt, the sanction is designed to punish defiance of the court's authority. *Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, 743 F. Supp. 1484, 1486 (D. Kan. 1990). In contrast, civil contempt is remedial in nature and characterized by the court's desire to compel compliance with a court order or to compensate the litigant for injuries sustained as a result of the disobedience. *Id.* Thus, a civil contempt order serves two purposes: (1) it compensates the opposing litigant for expenses incurred because of the contemnor's behavior; and (2) it coerces the contemnor into compliance with the Court's earlier order. *Cromaglass Corp. v. Ferm*, 500 F.2d 601, 604 (3d Cir. 1974).

The moving party has the initial burden to establish that the contemnor has failed to comply with a specific and definite court order. *United States v. Rylander*, 460 U.S. 752, 755 (1983); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989). This requires the moving party to establish by clear and convincing evidence both the existence of the order and that the contemnor has failed to take all reasonable steps to comply with it. *Balla*, 869 F.2d at 466. As a matter of procedure, a party seeking to compel compliance with a court order "requests the court to order the defendant to show cause why he should not be held in contempt and sanctioned until he complies." *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990). Then, "[i]f the court finds that the conduct as alleged would violate the prior order, it enters an order requiring the defendant to show cause why he should not be held in contempt and conducts a hearing on the matter." *Id.*

The standard for proving civil contempt requires the movant to establish through clear and

4

convincing evidence a party's failure to comply with a court's order. *Citizens For A Better Environment v. Wilson*, 775 F. Supp. 1291, 1299-1300 (N.D. Cal. 1991). Although good faith in attempting to comport with the order is generally not a defense, substantial compliance with the court's order is a valid defense. *Id.*

A civil contempt proceeding is a "trial" within the meaning of Federal Rule of Civil Procedure 43(a), as opposed to a hearing on a motion. *Hoffman v. Beer Drivers & Salesman's Local Union No., 888*, 536 F.2d 1268, 1277 (9th Cir. 1976). Therefore, civil contempt may not be tried on the basis of affidavits alone. *Id.*

In *Mercer*, the Eleventh Circuit summarized the appropriate procedure for a civil contempt proceeding:

> When the contumacious conduct occurs outside the presence of the court, due process requires, with very few exceptions, that the defendant (1) be informed, through a show-cause order, of his purportedly contumacious conduct, and (2) be given a hearing at which he can be represented by counsel, call witnesses, and testify in order to show cause why he should not be held in contempt.

*Id.* at 767 (footnoted omitted) (citing *In re Oliver*, 333 U.S. 499, 508 (1948)).

Should the Court find a party in contempt, it should fashion the sanction in consideration of the "character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). In general, the district court has wide discretion in determining the appropriate amount of a sanction award. *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1242 (9th Cir. 1989) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976)). However, "[s]anctions may be imposed to coerce the contemnor to comply with the court's order, but may not be so excessive as to be punitive in nature." *Citronelle-Mobile Gathering Inc., v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991). Sanctions may take the form of a daily fine, compensatory fine, attorneys' fees or coercive incarceration. *Id.*

When exercising discretion under its inherent sanction powers, a court should also consider the following factors: (1) the nature and quality of the conduct at issue; (2) who is responsible for the

culpable conduct, the attorney or the party; (3) whether there was a pattern of wrongdoing to require a stiffer sanction; (4) the sanctioned party's ability to pay; (5) whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and (6) the existence of mitigating factors. *Republic of Phillippines v. Westinghouse Elec.*, 43 F.3d 65, 74 (3d Cir.1994).

If attorney's fees are considered, there are twelve factors the district court may use in analyzing a fee request: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) the limitations imposed by the client, (8) the amounts involved and the results obtained, (9) the experience, reputation and abilities of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

The Court should use the Kerr factors in a "balancing test" to arrive at a reasonable fee award. *Id.* However, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rothfarb v. Hambrecht*, 649 F. Supp. 183, 185 (N.D. Cal. 1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 422 (1983)). If the Court finds that both the hourly rate and the amount of time spent are reasonable, there is a "strong presumption" that their product is a "reasonable award." *Long v. United States I.R.S.*, 932 F.2d 1309, 1314 (9th Cir. 1991). It should be emphasized, however, that an attorney's fee award under a court's inherent power is intended to vindicate judicial authority, not to provide a substantive remedy to an aggrieved party. *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir.1995). "The wrong done was to the court." *Id.* Additionally, before a Court can award attorney's fees, there must be a showing of bad faith or willfulness. *Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 (9th Cir. 1989).

When a corporation refuses to abide by an order directing the corporation to perform an act, and the corporation is under the control of a single corporate officer or managing agent, the Ninth Circuit

6

has held that a district court may hold the corporate officer in contempt, as well as the corporation, even when the corporate officer is not a party to the underlying action. *David v. Hooker, Ltd.*, 560 F.2d 412, 420-21 (9th Cir. 1977); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323-24 (9th Cir. 1998); *Irwin v. Mscott*, 370 F.3d 924, 931-32 (9th Cir. 2004). The authority for imposing such sanctions are provided by Federal Rules of Civil Procedure 70 and 71.[1] *Id. Westlake North Property Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir.1990) ("Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action."). However, "to be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant [in violating the court's order] or be legally identified with him," and that the non-party have notice of the order. *NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 633 (9th Cir.1977) (quotation omitted).

## **ANALYSIS**

As the Court stated on the record at the April 25, 2006 hearing, the Court found in its April 11, 2006 Order to Show Cause that Plaintiff had satisfied its initial burden of establishing that RES had failed to comply with a specific and definite court order; specifically, the March 16, 2006 Amended Judgment. Having now considered the testimony of Mr. Frater at the April 25, 2006 hearing, the Certificates of Counsel filed by RES and Mr. Frater on April 14, 2006, as well as the argument of counsel, the Court also finds that the evidence clearly and convincingly establishes that RES' failure to comply with the deadline set forth in the Court's Amended Judgment was willful. The Court first notes that – in the Certificates filed by RES and Mr. Frater – both RES and Mr. Frater stated that RES' noncompliance was caused by the following factors: (1) the fact that RES was in the midst of Chapter 11 reorganization and recovery; (2) "the constant filing of motions by NIKKO in this case"; (3) the fact that Mr. Frater was out of town conducting negotiations relating to new financing for RES at the time

---

[1] Rule 71 provides that "[w]hen an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party." Fed. R. Civ. P. 71.

1 the accounting was due; and (4) the fact that Mr. Frater generated the first report with such haste that
2 he did not notice that it was incomplete.  When questioned at the hearing, however, Mr. Frater recanted
3 his assertion that the "constant filing of motions by NIKKO" or the Chapter 11 reorganization
4 contributed to his failure to comply with the Court's Amended Judgment.  In fact, Mr. Frater was unable
5 to provide the Court with any explanation as to how the bankruptcy proceedings, or any motions filed
6 by NIKKO, adversely affected his ability to timely respond to the Court's Amended Judgment, or were
7 even relevant to the present proceedings.  *See*, *e.g.,* Tr. at 37:3-39:20.[2]  To the contrary, Mr. Frater and
8 his attorney repeatedly stated that the information necessary to comply with the Court's Amended
9 Judgment was readily available to both RES and NIKKO due to the fact that RES had been required to
10 produce the same documentation during the bankruptcy proceedings only a few months prior to the date
11 the Amended Judgment was issued.  *See, e.g.,* Tr. 17:6-18:6.

12 Further, the Court did not find Mr. Frater's statement that he was unable to comply with the
13 deadline set forth in the Amended Judgment merely because he was out of town to be credible.  First,
14 Mr. Frater admitted that he was on notice as early as January 2006 that RES would be required to submit
15 an accounting to the Court.  *See* Tr. at 37:17-38:8.  In fact, Mr. Frater initially stated that RES had
16 responded to the Court's January 13, 2006 Order by providing the requisite information to NIKKO in
17 February 2006.  *See* Tr. at 44:3-10.  However, Mr. Frater failed to reconcile this admission with his
18 conflicting assertion that he had to compile the information necessary to respond to March 16, 2006
19 Amended Judgment in great haste and while he was out of town on business during the week of March
20 15, 2006 through March 25, 2006.

21 Further, while Mr. Frater stated that he did not have time to review the report he submitted to
22 the Court in "detail," he later admitted that – after the inaccuracies in the report were brought to his
23 attention by NIKKO – it only took him *five to ten minutes* to review the entire report, which was only
24 a few pages long, and that it was "quite clear" that certain information was missing.  *See, e.g.,* Tr. 12:14-

---

[2] All transcript references herein are to the transcript for the April 25, 2006 Order to Show Cause hearing.

8

1 13:15; 33:2-8. Given these admissions, the Court finds Mr. Frater's failure to submit an accurate
2 accounting to the Court inexcusable. More importantly, as the Court stated on the record at the hearing,
3 Mr. Frater's testimony regarding his inability to provide an *accurate* accounting does not sufficiently
4 explain why he was unable to provide a *timely* accounting. Thus, based on all of the evidence before
5 the Court, including Mr. Frater's *own admission* that he reviewed the Court's March 16, 2006 Amended
6 Judgment on or about March 16, 2006, the Court concludes that RES, through Mr. Frater, was aware
7 of the March 24, 2006 deadline but nevertheless willfully disregarded it. As such, the Court finds that
8 RES is in contempt of the March 16, 2006 Amended Judgment. As the President and Chief Executive
9 Officer of RES, and the person who controlled the actions of RES during the relevant period, the Court
10 also holds Mr. Frater in contempt. *See David v. Hooker, Ltd.*, 560 F.2d 412, 420-21 (9th Cir. 1977);
11 *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323-24 (9th Cir. 1998); *Irwin v. Mscott*, 370 F.3d
12 924, 931-32 (9th Cir. 2004).

13 As to the issue of sanctions, the Court first notes that Mr. Frater and RES' willful failure to
14 comply with the Amended Judgment has needlessly drained this Court's resources and has delayed the
15 final resolution of this case by several months. Due to the fact that Plaintiff has been forced to expend
16 a considerable amount of its own resources in attorney's fees in order to compel compliance with the
17 Amended Judgment, Plaintiff has also been adversely, and unfairly, impacted by RES' actions. Thus,
18 the Court finds that Plaintiff's request for an award of attorney's fees is appropriate and that such a
19 sanction would serve the dual purposes of: (1) compensating Plaintiff for expenses incurred because of
20 the contemnor's behavior; and (2) coercing the contemnor into compliance with the Court's Order.
21 *Cromaglass Corp. v. Ferm*, 500 F.2d 601, 604 (3d Cir. 1974).

22 In determining the amount of sanctions to award, the Court has considered Plaintiff's evidentiary
23 submissions, as well as RES' counsel's arguments opposing Plaintiff's fee petition. The Court notes that
24 Plaintiff is requesting an order directing RES and Mr. Frater to pay NIKKO $64,313.25 in attorney's
25 fees, comprised of: (1) fees in the amount of $11,657.50, incurred as a result of Plaintiff's having to file
26 its Ex Parte Request to Further Amend the Judgment; (2) fees in the amount of $6,874.25, incurred as

9

a result of Plaintiff's having to review RES' invoices in order to analyze the discrepancies in the two versions of the accountings submitted by RES; (3) fees in the amount of $11,447.00, incurred as a result of Plaintiff's having to prepare and submit the attorney's fees documentation in response to the Court's Order to Show Cause; (4) fees in the amount of $33,937.00, incurred as a result of Plaintiff's having to file a Motion to Correct Judgment.

The Court finds that an award of $23,899.50 is reasonable, and thus only partially GRANTS Plaintiff's request. Since the Order to Show Cause was directed at RES' failure to comply with the March 16, 2006 Amended Judgment only, Plaintiff's request for $33,937.00 in fees associated with filing the Motion to Correct Judgment is not reasonable and is therefore denied. Further, since Plaintiff would have expended time reviewing RES' accounting regardless of whether it was filed late or on time, the Court does not agree that fees associated with this process (*i.e.* the request for fees in the amount of $6,874.25) should be awarded. However, Plaintiff's request that it be compensated for the fees it incurred as a result of having to file the Ex Parte Request to Further Amend the Judgment (*i.e.* the request for fees in the amount of $11,657.50) is reasonable. Plaintiff's request for fees incurred as a result of having to prepare and submit the instant attorney's fees documentation (*i.e.* the request for fees in the amount of $11,447.00) is also reasonable. The Court has also included in the award an additional $795.00, for fees incurred by Plaintiff as a result of Mr. Poppe's attendance of the April 25, 2006 hearing, which lasted approximately 1.5 hours.[3]

Finally, the Court notes that it has reviewed Plaintiff's billing records, and does not agree with Defendant that there is any redundancy in Plaintiff's submissions. Instead, the Court finds that the hours expended were reasonable and necessary. Further, the Court has already reviewed Plaintiff's counsel's billing rates and found them to be reasonable in light of the prevailing rate in the community at comparable firms and in light of the complexity of this litigation.

---

[3] The $795.00 in fees results from the length of the hearing, 1.5 hours, multiplied by Mr. Poppe's billing rate of $530.00 per hour.

10

**CONCLUSION**

IT IS HEREBY ORDERED AND THE COURT FINDS THAT Defendant R.E. Service Co., Inc. and Mark Frater are in CONTEMPT of the Court's March 16, 2006 Amended Judgment.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Attorney's Fees [Docket No. 571] is GRANTED IN PART.  The Court hereby awards fees to Plaintiff in the amount of $23,899.50, to be paid by R.E. Service Co., Inc. and Mark Frater, jointly and severally.

IT IS SO ORDERED.

Dated: 6/21/06

SAUNDRA BROWN ARMSTRONG
United States District Judge